# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICHAEL S.[1], | Case No. 6:23-cv-44-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Brent Wells, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jennifer C. Forsyth, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Michael S. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits (DIB) under the Social Security Act (Act). For the reasons below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff applied for DIB on October 16, 2019, alleging an onset date of May 1, 2016. AR 13, 249. Plaintiff was 31 years old on the alleged onset date and had past work experience as an inventory clerk, animal caretaker, groundskeeper, delivery driver, and truck washer. AR 25.

Plaintiff alleges he is unable to work due to post-traumatic stress disorder (PTSD), generalized

anxiety disorder, bipolar II, and obsessive-compulsive disorder (OCD). AR 281. The agency

denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a

hearing. AR 108, 113, 115. Plaintiff and his attorney representative appeared virtually before the

ALJ on August 19, 2021. AR 36.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful
> activity? (2) Is the claimant's impairment severe? (3) Does the
> impairment meet or equal one of a list of specific impairments
> described in the regulations? (4) Is the claimant able to perform
> any work that he or she has done in the past? and (5) Are there
> significant numbers of jobs in the national economy that the
> claimant can perform?

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). If

the analysis continues beyond step three, the ALJ must evaluate medical and other relevant

evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d

at 1100. At step five, the Commissioner must show that the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C. The ALJ's Decision

As a preliminary matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirement through December 31, 2021. AR 15. At step one of the sequential analysis, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 1, 2016. *Id.* At step two, the ALJ found that the Plaintiff had the following severe impairments: asthma, anxiety, depression, bipolar II, PTSD, OCD, and obesity. *Id.* At step three, the ALJ determined that none of the impairments, singly or combined, equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then found the Plaintiff had the RFC to perform the full range of work at all exertional levels, with the following nonexertional limitations:

> the claimant should have no exposure to concentrated atmospheric conditions as defined by the DOT [dictionary of occupational titles]; he is able to understand, remember, and carry out short and simple instructions consistent with unskilled work that could be learned in 30 days or less; he should have no interactive contact with the public; he is capable of occasional interactive contact with coworkers or supervisors.

AR 17.

At step four, the ALJ found that the Plaintiff did not have the ability to perform his past relevant work. AR 25. At step five, the ALJ found the Plaintiff had the ability to perform jobs that exist in significant numbers in the national economy, specifically as a routing clerk and

machine packager. AR 25-26. The ALJ thus concluded that the Plaintiff was not disabled under the Act from the alleged onset date of May 1, 2016, through December 14, 2021, the date of the ALJ's decision. AR 26.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) rejecting Plaintiff's subjective symptom testimony; (B) finding the medical opinions of Stephan Ames, MD, and Christopher Tower, PMHNP, less than fully persuasive; and (C) rejecting the lay testimony of Plaintiff's wife. The Court addresses each argument in turn.

## A. Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson.*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Plaintiff testified he has not worked since 2016. AR 43. Plaintiff left his last job at Walmart after attempting suicide. AR 46. Plaintiff explained he attempted suicide because he "had constantly been getting what [he] felt were mixed signals at work from [his] management team." *Id.* He testified he was "too helpful and . . . was unable to cope with trying to talk management about it." *Id.* He experienced symptoms of "[c]onstant anxiety" and was "very anxious as [he went] to work" as well as "feelings of worthlessness, exacerbated by a very competitive environment at work where you're expected to take criticism even if it's not constructive." *Id.* He testified that his symptoms lessened after leaving work, but have never gone away. AR 48. He treats his anxiety with cannabis "all day every day." AR 52. He takes diazepam once a week to once every other week as a "break-through" drug. AR 48-49.

Plaintiff also testified that he spends most of his days "browsing YouTube and Reddit with no real purpose" and playing video games. AR 51. He explained that his "anxiety or depression keeps me from doing what I feel is my fair share of the [household] work" noting that his wife cleans the house and does all of the grocery shopping. *Id.* He does go out to "buy cannabis occasionally." AR 52. He testified that he has not worked since leaving his last job

because an attempt to fill out a job application led to a panic attack and "spiked his suicidality," at which point he and his wife decided he should not work. AR 53.

The ALJ provided the boilerplate statement that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 19. The ALJ concluded that Plaintiff's alleged limitations were (1) contradicted by his response to and noncompliance with medical treatment, (2) inconsistent with his activities of daily living,[3] and (3) unsupported by the objective medical evidence.

### 1. Treatment Evidence

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. 20 C.F.R. § 404.1529(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. § 404.1530(b). If, however, the claimant has a good reason for not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's subjective symptoms. *See* 20 C.F.R. § 404.1530(c); *see also Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling (SSR) 16-3p, *available*

---

[3] The ALJ described this reason in discussing the lay witness statement of Plaintiff's wife. "Even when an agency explains its decision with less than ideal clarity, [the reviewing court] must uphold it if the agency's path may reasonably be discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quotation marks omitted).

*at* 2017 WL 5180304, at *9 (Oct. 25, 2017) (explaining that an ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints" and that the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints").

A claimant's improvement with treatment also is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014. A court must also consider "that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in the workplace." *Id.* It is error, however, "to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. *Id.* An ALJ may not "pick out a few isolated instances of improvement over a period of months or years." *Id.*

To start, the ALJ noted that Plaintiff left his last job on May 1, 2016. Plaintiff , however, did not seek medical treatment for his depression until August 22, 2017. AR 19 (citing AR 456-57). Although Plaintiff stated at the hearing that he did not seek treatment until his insurance

improved "about six months after" leaving his job, AR 48, the record shows a gap of more than a year before Plaintiff sought medical care for his symptoms. *See* AR 456-57.

The ALJ then described Plaintiff's inconsistent history of treatment, including failure to follow medical advice and take medications as prescribed. AR 20-23. For example, Plaintiff discontinued Effexor after taking it for only three days because he could not tolerate the medication. AR 20 (citing AR 452). Plaintiff reported that it "caused mood swings and increased agitation." AR 450. The ALJ also described Plaintiff's self-discontinuation of the medication Buspar. AR 20 (citing AR 403-04, 406-07). Plaintiff was prescribed Buspar in October 2017, AR 455, and Psychiatric nurse practitioner (NP) Carrie Kralicek increased his dosage on January 29, 2018. AR 408. On March 4, 2018, however, in his follow up with NP Kralicek, Plaintiff reported he had "discontinued Buspar due to perceived ineffectiveness." AR 404. NP Kralicek wrote "[Plaintiff] is encouraged to continue [Buspar] as he was not taking a therapeutic dose and it takes approximately 4-6 weeks to be effective." AR 404. The ALJ pointed out that there is no record of Plaintiff following up with NP Kralicek after this visit. AR 20.

The ALJ also noted Plaintiff's improvement with treatment, and the ALJ previously had summarized the record describing Plaintiff's improvement. The ALJ further noted that providers indicated that Plaintiff's cannabis use may have interfered with his experiencing even greater improvement. *See* AR 24 (discussing that Dr. Silberman and NP Tower "suggested that his cannabis was interfering with his treatment" and then Plaintiff stopped treatment with those providers). Treatment records support the ALJ's reasoning. From September 4, 2019, through April 29, 2020, Plaintiff was prescribed a combination of aripiprazole (Abilify) and citalopram (Celexa), and generally reported improved symptoms while on medications, excepting some coronavirus-related anxiety. *See* AR 466, 469, 472, 474, 482, 484, 506. The record shows

Plaintiff's mental status declined when he stopped taking his medications as prescribed. *See, e.g.*, AR 480. By June 2, 2020, Plaintiff was again not taking medication and was exhibiting signs of irritability and depressive mood. *See* AR 503. NP Tower suggested cannabis use might be interfering with effectiveness of medication, which Plaintiff rejected. AR 501.

Dr. Ames referred Plaintiff to Dr. Stuart Silberman, Psy.D. for neurofeedback counseling in April 2021. AR 530. Plaintiff first met with Dr. Silberman on August 3, 2021. AR 554. Plaintiff reported to Dr. Ames that Dr. Silberman asked Plaintiff to refrain from using diazepam or cannabis before neurofeedback sessions. AR 548. Plaintiff reported that he found it too difficult to give up cannabis and if Dr. Silberman would not let him continue its use on treatment days, he would have to stop treatment. *Id.* Plaintiff discontinued services with Dr. Silberman after only three visits. AR 564. Notes from Plaintiff's request to discontinue services with Dr. Silberman state that Plaintiff was "currently in disability help, suicidality, and depression. LSD, shrooms trying to fix this, waiting for psilocybin." *Id.* Dr. Silberman's final client note stated "[p]atient discontinued services. . . . Client indicated he felt significantly less anxious after each session, but shortly after symptoms would increase. He indicated the only thing that helps him to feel better is the constant use of marijuana." *Id.*

Considering the record as whole, the ALJ's conclusion that Plaintiff responded well to treatment, was noncompliant with recommended treatment, and that his cannabis use may have interfered with even more improvement with treatment[4] is supported by substantial evidence.

---

[4] Plaintiff argues that Dr. Ames's medical opinion addresses the concern with Plaintiff's use of cannabis. Specifically, Plaintiff relies on Dr. Ames statement that "[c]annabis has the ability to cause more anxiety but cannabis also has been used to treat anxiety. When I see [Plaintiff] he does not appear overly anxious." AR 540. Dr. Ames's statement, however, does not offer meaningful evidence as to whether cannabis interferes with the efficacy of Plaintiff's medication or treatment. Nor does his statement somehow discredit records of other medical providers having counseled Plaintiff regarding cannabis use and its possible effect on treatment.

Plaintiff requests a different interpretation of the record, but so long as the ALJ's interpretation is rational, the Court affirms the ALJ's interpretation. *Burch*, 400 F.3d at 679.

### 2. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison*, 759 F.3d at 1017.

The ALJ cited Plaintiff's claim that he becomes overwhelmed and frustrated, and anxious and agitated in public. AR 24. The ALJ found this inconsistent with Plaintiff's normal presentation at his doctor's appointments and generally cooperative behavior, although the ALJ still included limitations addressing Plaintiff's problem with public contact in the RFC. This is a rational interpretation of the evidence. The ALJ also cited that Plaintiff and his wife report that Plaintiff spends most of every day playing online computer games with friends. The ALJ noted that this "requires a greater level of attention and concentration, as well as frustration tolerance than alleged." *Id.* This activity is inconsistent with the particular limitations asserted by Plaintiff. Thus, regardless of the other activities noted by the ALJ, Plaintiff's daily living activities are a clear and convincing reason asserted by the ALJ.

### 3. Objective Medical evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 404.1529(c)(2), (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ noted that although Plaintiff's treatment records are limited, "mental status findings are largely within normal limits, with some waxing and waning of symptoms." AR 19. Plaintiff's records support the ALJs conclusion, as objective findings are generally normal with

some periods of depressed mood or affect. For example, NP Tower's records generally show appropriate affect; intact, logical thought process; appropriate thought content; normal cognitive functioning; and appropriate insight and judgment. *E.g.*, AR 470, 472, 474, 476, 482, 484, 486, 493, 501. Dr. Silberman's records indicate Plaintiff's mood was "euthymic"; insight and judgment were "excellent"; his memory was "intact"; his attention and concentration were "good"; and his thought process was "unremarkable." AR 554, 558-559, 561-562.

Finally, the ALJ concluded that the record shows Plaintiff's mental health symptoms "are not at a level that would keep him from sustaining full time work." AR 24. To support this conclusion, the ALJ noted that Plaintiff "does not have a significant history of psychiatric decompensations requiring hospitalization." *Id.* Indeed, the record shows that Plaintiff did not seek treatment after his suicide attempt, and even continued working for several months. AR 385. Additionally, as the ALJ pointed out, the record shows that Plaintiff's recommended treatment protocols were "very routine and conservative" to include medication management and supportive therapies. AR 24. In sum, the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

**B. Medical Opinion Evidence**

Plaintiff filed his application for benefits on October 16, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). These revised regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security

regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under these regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. § 404.1520c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. §§ 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 1. Dr. Ames

Dr. Ames has been Plaintiff's primary care provider since March 6, 2019. AR 540. In July 2021, in response to inquiries submitted by Plaintiff's representative, Dr. Ames provided a written opinion in support of Plaintiff's DIB application. AR 540. Dr. Ames stated that Plaintiff's most notable conditions are "bipolar 2 disorder and generalized anxiety disorder with some obsessive-compulsive disorder and recurrent major depression." *Id.* Dr. Ames opined,

> [Plaintiff's] major health problem is his bipolar disorder with anxiety that limits him from being able to interact with the public. He usually stays home and cannot work well with others and gets irritable fairly easily, does not respond well to criticism or instruction. He has problems sustaining attention and concentrating on routine tasks.

*Id.* He further noted that Plaintiff "would have significant absenteeism because of not feeling well or just not feeling his brain is working well." *Id.* Dr. Ames concluded that, because of his symptoms, Plaintiff would "lose 2 or 3 days/week and he would also be late fairly often." *Id.* The ALJ found Dr. Ames' opinion not persuasive because (1) Dr. Ames "provided minimal indications of [Plaintiff's] functioning without a specific functional assessment"; (2) Dr. Ames, who is not a mental health practitioner, did not appear to review Plaintiffs' mental health treatment records, could not have reviewed Dr. Silberman's records because he had not yet started treating Plaintiff, and appeared only to rely on Plaintiff's subjective statements regarding his limitations; and (3) Dr. Ames's treatment records did not contain clinical findings sufficient to support the limitations assessed. AR 23.

Plaintiff argues that the ALJ erred in finding Dr. Ames' opinion unpersuasive. An independent review of the record, however, confirms the ALJ's conclusions are supported by substantial evidence.

### a.  Functional Assessment

The ALJ's first criticism is unclear. Dr. Ames opined that Plaintiff would miss two-to-three days of work per month, which is a functional assessment. A doctor may render an opinion that includes only one functional assessment. *See, e.g.*, *Connor S. v. Kijakazi*, 2023 WL 2764638, at *5 (E.D. Wash. Mar. 31, 2023) (reversing ALJ's opinion discounting doctor who "offered only one functional assessment: that Plaintiff would miss work one or more days of work per month"). It appears that the ALJ may have been criticizing Dr. Ames either for not including more functional limitations or for not providing a more supported analysis of Dr. Ames's conclusion regarding the functional limitation that Plaintiff would miss two-to-three days per month. Either way, the ALJ's confusing statement, assuming it is an erroneous basis to discount Dr. Ames's opinion, is harmless because Dr. Ames's opinion that Plaintiff would miss two-to-three days per month was based on Plaintiff's mental health symptoms, and the ALJ discounted in whole Dr. Ames's opinion regarding Plaintiff's mental health symptoms for two additional reasons, discussed below.

### b.  Improper Reliance on Plaintiff's Self-Reports

"If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162 (quotation marks omitted). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on

the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v.*
*Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Plaintiff argues that *Buck* applies to Dr. Ames's opinion. Dr. Ames, however, is not a
mental health provider and was not performing a psychiatric evaluation. Dr. Ames was
Plaintiff's primary care physician. Indeed, Dr. Ames's clinic referred Plaintiff to other
practitioners for mental health services. *See* AR 419, 530. Further, Dr. Ames's evaluations of
Plaintiff did not include the objective psychiatric tests and other objective measures on which to
base significant psychiatric limitations. The ALJ did not err in concluding that Dr. Ames
improperly relied on Plaintiff's self-reports.

### c.  Treatment Records

The ALJ asserted that Dr. Ames' records do not contain clinical findings supporting the
extent of the limitations Dr. Ames opined for Plaintiff. AR 23; *see* 20 C.F.R. § 404.1520c(c)(1)
(explaining that the "supportability" factor considers "the objective medical evidence and
supporting explanations presented by a medical source . . . to support his or her medical
opinion(s)"). The ALJ noted a specific inconsistency—that Dr. Ames commented that cannabis
can cause anxiety and yet had not observed Plaintiff appearing overly anxious. The ALJ's earlier
recitation of Dr. Ames's records, however, included that Plaintiff reported he was doing better on
Lexapro with the only side effect of feeling tired and that Dr. Ames merely recommended
counseling and exercise. AR 20. The ALJ also noted that in April 2021 (a few months before
Dr. Ames drafted his opinion letter), Dr. Ames noted that Plaintiff's overall physical health was
good and in May 2021 Plaintiff told Dr. Ames that Plaintiff was treating his mental health
symptoms with exercise, cannabis, and interacting with his dog. AR 22. Dr. Ames prescribed
diazepam for use as needed, and Plaintiff estimated using it 10 times per month.

Dr. Ames met with Plaintiff five times from the date he established care, March 6, 2019, to the date Dr. Ames submitted his medical opinion, July 2, 2021. Records from those visits include the standard review of systems, all with generally unremarkable findings. *See* AR 425-28; 429-32; 436-38; 525-29; 530-36. Additionally, in the most recent visit before Dr. Ames completed his opinion letter, Dr. Ames stated that Plaintiff "has court for his disability coming up and that will be more stressful for him." AR 525. Dr. Ames then stated, without explanation or support, that Plaintiff "has not been able to keep a job" and "he just cannot get there on time for work." AR 525.

The ALJ noted that Dr. Ames proffered his opinion without seeming to have reviewed the records of other mental health providers, and necessarily without Dr. Silberman's observations, who began treatment in August 2021, after Dr. Ames's July 2021 opinion letter. AR 23. An ALJ may reject medical source opinion evidence that is inconsistent with other medical opinions of record, or inconsistent with the objective medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (concluding that the ALJ did not err in rejecting medical opinion that was inconsistent with objective medical evidence and another medical opinion of record); 20 C.F.R. § 404.1520c(c)(2) (explaining that the "consistency" prong evaluates how consistent an opinion "is with the evidence from other medical sources"). Dr. Silberman treated Plaintiff three times before Plaintiff discontinued services. AR 555, 559, 561, 564. Dr. Silberman's assessments indicated Plaintiff was "[f]riendly, polite, cooperative" and was "making steady progress" before discontinuing services. AR 559, 562. Indeed, Dr. Silberman consistently recorded unremarkable mental health findings, including logical and coherent thought process and intact attention and concentration. AR 559, 562. In sum, the ALJ

did not err in finding Dr. Ames' opinion unpersuasive because it was devoid of supportable explanations and inconsistent with objective medical evidence.

### 2. NP Tower

NP Tower submitted a medical opinion of Plaintiff's mental status and functional capacities on July 6, 2021. AR 541-47. NP Tower clarified that his opinion only covered the period of his treating relationship with Plaintiff, July 2019 through June 2020. NP Tower diagnosed Plaintiff with bipolar disorder, OCD, generalized anxiety, PTSD, and binge eating. AR 541-542. NP Tower opined that symptoms of depression, manic irritability, binge eating, anxiety, and nightmares "could be significant in effecting [sic] [Plaintiff's] ability to function in a work setting." AR 542. NP Tower further stated that "[w]hen I saw him he probably could not have worked an [eight] hour day." *Id.* He assessed Plaintiff with mild to moderate limitations in the mental functional assessment. AR 544.

The ALJ generally found NP Tower's opinion persuasive. AR 23. Specifically, the ALJ noted that findings of mild to moderate limitations, while not supported by specific examples or clinical observations in NP Tower's opinion, were "generally consistent with NP Tower's records which document his clinical findings, assessments, and efficacy of treatment." *Id.* The ALJ found, however, that statements that Plaintiff could not have worked an eight-hour day during his period of treatment were conclusory because NP Tower provided no specific explanation, assessment, or objective basis for those assertions. *Id.*

An ALJ may reject a medical opinion if it is "brief, conclusory, and inadequately supported by clinical findings." *Ford v. Saul*, 941 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). The ALJ did not err in finding NP Tower's assessment of Plaintiff's ability to work an eight-hour day because NP Tower provided no substantial evidence to support this conclusion. Nor do any of his treating records support the

claim that Plaintiff could not work an eight-hour day. In fact, NP Tower's objective findings are generally unremarkable, showing intermittent worsening symptoms of depression, largely related to Plaintiff stopping prescribed medication. *E.g.*, AR 480, 482, 484, 486, 493. Therefore, the ALJ did not err in discounting NP Tower's assessment of Plaintiff's ability to work an eight-hour day.

## C.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill*, 12 F.3d at 919). In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in

the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's wife submitted written testimony describing his symptoms, activities of daily living, and behaviors in support of his disability application. AR 312-19, 384-87. The ALJ first noted that Plaintiff's wife "described greater activities of daily living" than those described in Plaintiff's statements. AR 24. This appears to refer to the ALJ's summary that Plaintiff's wife initially described that they prepared meals and performed chores together,[5] while Plaintiff described that he relied on his wife to perform chores and prepare meals. The two statements otherwise had substantial overlap. The ALJ does not appear specifically to rely on this purported minor discrepancy to discount the lay witness statement. Even if she did, it would be harmless error because the ALJ offered other germane reasons.

---

[5] The ALJ's summary that Plaintiff's wife stated that "they prepare meals together and do household tasks together" is a bit of an overstatement. In April 2020 Plaintiff's wife described limited functioning of Plaintiff—that he could heat a frozen meal once per week and could take out the trash or mow the lawn with her help. AR 314. In July 2021, Plaintiff's wife described that Plaintiff "cannot prepare food for himself" and that if she is gone for more than 24 hours, he will not prepare a meal and will only eat snacks that she has left. AR 386. She also explained that he will mow the lawn if she pushes, it often triggers a panic attack, and he has asked her to hire a lawn service. *Id.* She described that he has about four good days per month and on those days she can get him to help with some chores if she pushes. *Id.*

The ALJ described that the RFC takes into account Plaintiff's supported limitations, but that the lay witness statement described a degree of anxiety and agitation with going in public that is belied by Plaintiff's conduct in his medical appointments. The ALJ also explained that the lay witness statement described extreme difficulties with concentration and attention but also Plaintiff's extensive playing of computer games. Finally, the ALJ noted that Plaintiff's wife described Plaintiff's symptoms of anger and frustration dating back to 2010, when Plaintiff was engaged in substantial gainful activity. These are all germane reasons for discounting the lay witness testimony.

Additionally, the lay witness testimony described the same limitations as did Plaintiff's testimony. Thus, even if the ALJ had not provided independent germane reasons to discount the lay witness testimony, it would be harmless error because the Court has upheld the ALJ's discounting of Plaintiff's testimony and those same reasons would apply to discount the lay witness testimony. *Molina*, 674 F.3d at 1117.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 20th day of February, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge